IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21–cv–03112–CMA–MDB

HUNTER ADAM MELNICK,

Plaintiff,

v.

US BANK NATIONAL ASSOCIATION,

Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Magistrate Judge Maritza Dominguez Braswell**

This matter is before the Court on "U.S. Bank's Motion to Dismiss and Compel Arbitration." (["Motion"], Doc. No. 23.) Plaintiff has responded in opposition to the Motion, and Defendant has replied. (["Response"], Doc. No. 37; ["Reply"], Doc. No. 38.) The Motion has been referred to the undersigned, pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1, for a recommendation regarding disposition. (Doc. No. 26; *see* Doc. No. 59.) For the following reasons, it is **RECOMMENDED** that the Motion be **GRANTED**.

**SUMMARY FOR *PRO SE* PLAINTIFF**

The Court is recommending that your case be dismissed for lack of subject matter jurisdiction. Specifically, the Court finds that you have failed to meet your burden, as the party invoking federal jurisdiction, to show that it is more likely than not that the amount in controversy may exceed $75,000 exclusive of interest and costs. However, the Court is

recommending that your case be dismissed without prejudice, meaning that you should be given an opportunity to file an amended complaint, if you so choose. This is only a summary of the Court's decision. The complete decision is set forth below, including information about your right to object to this Recommendation within a set period of time.

**STATEMENT OF THE CASE**

*Pro se* Plaintiff Hunter Adam Melnick, a Colorado prisoner, brings this diversity action against his bank, Defendant US Bank National Association, asserting claims of fraud, deceptive trade practices, and emotional distress. (Doc. No. 9.) According to the First Amended Complaint, on September 4, 2020, while Plaintiff was incarcerated, his "identity was stolen" by nonparty Tiffany Salamone. (*Id.* at 3.) Plaintiff alleges that he subsequently notified Defendant of the identity theft "via telephone many times from November 15th to December 2020," and instructed the bank to "freeze [his] account." (*Id.*) However, Plaintiff alleges that Defendant "refused to freeze [his] account," and instead, "allowed multiple fraudulent withdrawals, transfers, and even the opening up of a secondary account without authorization." (*Id.*) Specifically, Plaintiff complains that, on December 16, 2020, a total of $4,000 was debited from his account and transferred to "an unknown account." (*Id.*; *see* Doc. No. 1 at 4.) Plaintiff likewise complains that, on December 23, 2020, Ms. Salamone, using a "false power of attorney," closed his account and obtained a cashier's check from Defendant for the remaining account balance of $5,910.67. (Doc. No. 9 at 3; *see* Doc. No. 1 at 4.)

According to the First Amended Complaint, following these events, Plaintiff "diligently attempted to work with Defendant to get [his] money returned," and "repeatedly requested that Defendant pursue criminal charges against Tiffany Salamone." (Doc. No. 9 at 3.) However,

Plaintiff complains that Defendant has failed to take any action to rectify the situation, and instead, has "allowed and condoned a criminal to keep rampaging through [his] finances." (*Id.*) Plaintiff alleges that Defendant has continued to "mislead[]" him, "misdirect[]" him, and "defraud [him] of [his] money." (*Id.*) Plaintiff "believes" that Defendant has also "engaged in deceptive trade practices as outlined in this claim." (*Id.*) Plaintiff complains that Defendant has deprived him of "access to legally entitled money for almost a year." (*Id.*) In addition, Plaintiff complains that Defendant deprived him of the opportunity "to invest [his] roughly $10,000 plus the ability to margin against 50%." (*Id.*) Plaintiff also alleges that Defendant has caused him to suffer "substantial emotional distress." (*Id.*)

Based on these allegations, on November 18, 2021, Plaintiff commenced this action in federal court, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. No. 1 at 1.) On December 27, 2021, Plaintiff filed his First Amended Complaint, in which he requests nominal, compensatory, and punitive damages totaling $1,000,000, as well as an injunction "requiring the Defendant to institute comprehensive fraud policy reform to help fix the problems that happened to Plaintiff[.]" (doc. No. 9 at 1-2.) Plaintiff also asks for "Attorney Fees and related court costs," as well as "any other relief that this court deems necessary." (*Id.*)

Defendant now moves to dismiss the First Amended Complaint, in its entirety, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. No. 23.) Specifically, Defendant argues that the Court lacks subject matter jurisdiction over this case, because it is "legally certain" that Plaintiff's alleged damages will not exceed $75,000. (*Id.* at 9-14.) In addition, Defendant argues that the First Amended Complaint "fails to meet the minimum

pleading requirements as to any claim." (*Id.* at 5-9.) Defendant argues, in the alternative, that Plaintiff's claims are subject to mandatory arbitration. (*Id.* at 14-15.)

**STANDARDS OF REVIEW**

## I. Legal Standard for *Pro Se* Plaintiff

Plaintiff is proceeding *pro se*. The Court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding the allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (stating that a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to an application of different rules. *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## II. Federal Rule of Civil Procedure 12(b)(6)

The Court begins with Defendant's argument that this case should be dismissed, in its entirety, under Rule 12(b)(1), for lack of subject matter jurisdiction. *See Steel Co. v. Citizens for*

*Better Env't*, 523 U.S. 83, 93-102 (1998) (clarifying that a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject matter jurisdiction) and the parties (personal jurisdiction)); *Kenney v. Helix TCS, Inc.*, 284 F. Supp. 3d 1186, 1188 (D. Colo. 2018), *aff'd*, 939 F.3d 1106 (10th Cir. 2019) ("Where, as here, a defendant seeks dismissal under Rule 12(b)(1) and Rule 12(b)(6) in the alternative, 'the court must decide first the 12(b)(1) motion for the 12(b)(6) motion would be moot if the court lacked subject matter jurisdiction.'") (internal quotations marks and citations omitted).

Federal Rule of Civil Procedure Rule 12(b)(1) empowers a court to dismiss a complaint for a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting it. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Id.* at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however,

the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). If a party challenges the facts upon which subject matter jurisdiction depends, a court may not presume the truthfulness of the complaint's "factual allegations . . . [and it] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

**ANALYSIS**

In this case, Plaintiff alleges federal subject matter jurisdiction predicated solely upon diversity of citizenship, which requires: (1) complete diversity among the parties; and (2) that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1). Since the diversity of the parties is apparently not in dispute, the sole issue here is whether the amount in controversy exceeds the jurisdictional threshold. In its Motion, Defendant argues that subject matter jurisdiction is lacking, because Plaintiff's "alleged damages are legally certain to not amount to $75,000.00." (Doc. No. 23 at 9-10.) Plaintiff, in response, argues that his allegations "affirmatively establish[] that $75,000 or more is 'possibly in play.'" (Doc. No. 37 at 2.)

Generally, "[w]hen a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014). Under such circumstances, "the sum claimed by the plaintiff controls," and the plaintiff does not need to support his jurisdictional allegations with evidence. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 276 (1977); *McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008). However, if the amount in controversy is challenged,

the plaintiff cannot rest on allegations alone. *Marcus Foods Co. v. DiPanfilo*, 671 F.3d 1159, 1171 (10th Cir. 2011). Rather, where material factual allegations as to the amount in controversy are contested, "the plaintiff[] must show that it does not appear to a legal certainty that [he] cannot recover the jurisdictional amount." *Woodmen of World Life Ins. Soc'y*, 342 F.3d 1213, 1216 (10th Cir. 2003) (internal quotation marks and citation omitted). This requires the plaintiff to prove, by a preponderance of the evidence, facts sufficient to establish "that the amount in controversy may exceed $75,000." *McPhail*, 529 F.3d at 953. However, "[i]t is only the jurisdictional facts that must be proven by a preponderance—not the legal conclusion that the statutory threshold amount is in controversy." *Id.* at 955.

There is a "strong presumption favoring the amount alleged by the plaintiff" and "it is difficult for a dismissal to be premised on the basis that the requisite jurisdictional amount is not satisfied." *Woodmen*, 342 F.3d at 1216-17. "Only if it is 'legally certain' that the recovery or cost of complying with judgment will be 'less than the jurisdictional floor may the case be dismissed.'" *Phelps Oil & Gas, LLC v. Noble Energy, Inc.*, 5 F.4th 1122, 1126 (10th Cir. 2021) (quoting *McPhail*, 529 F.3d at 955). "Generally, dismissal under the legal certainty standard will be warranted only when a contract limits the possible recovery, when the law limits the amount recoverable, or when there is an obvious abuse of federal court jurisdiction." *Woodmen*, 342 F.3d at 1217.

"The proponent of jurisdiction may meet its burden with interrogatories, affidavits, calculation from the complaint's allegations, reference to informal estimates or settlement demands, or other evidence." *Canidae, LLC v. Westendorf*, No. 21-cv-01007-PAB-SKC, 2022 WL 279623, at *6 (D. Colo. Jan. 31, 2022) (citing *McPhail*, 529 F.3d at 956); *see also Marcus*

*Food*, 671 F.3d at 1171 (stating that a plaintiff may supplement jurisdictional allegations with "affidavits or other evidence"). "Conclusory assertions or outright speculation as to the amount potentially recoverable under a given theory will not suffice." *Palmieri v. Forden*, No. 22-cv-00440-LTB-GPG, 2022 WL 2287579, at *3 (D. Colo. Apr. 27, 2022) (citing *Klein v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-02257-MSK, 2008 WL 4948775, at *3 (D. Colo. Nov. 18, 2008)); *accord Phelps Oil & Gas, LLC v. Noble Energy, Inc.*, 5 F.4th 1122, 1126 (10th Cir. 2021) ("Our precedents explain that the amount in controversy cannot be based on contingent, speculative, or collateral claims that could possibly occur as a result of the judgment."). "Every separate and distinct claim must individually meet the amount in controversy." *Watson v. Blankenship*, 20 F.3d 383, 386 (10th Cir. 1994) (citing *Lonnquist v. J.C. Penney Co.*, 421 F.2d 597, 599 (10th Cir. 1970)).

Turning to its analysis, the Court must determine whether it is possible for Plaintiff to recover $75,000 or more in damages. This requires the Court to examine the allegations set forth in Plaintiff's First Amended Complaint, as well as the types of relief sought within. *See, e.g.*, *Marin v. Ross*, No. 22-cv-00064-LTB-GPG, 2022 WL 3099207, at *4-5 (D. Colo. Apr. 26, 2022); *Am. Health Connection v. Doctor to Doctor Sales Sols., LLC*, No. 21-cv-00702-CMA-STV, 2021 WL 5770227, at *2 (D. Colo. Dec. 6, 2021). In evaluating the amount in controversy, the Court considers all damages alleged, as well as the value of any equitable relief. *See Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1247 (10th Cir. 2012) ("The preponderance of the evidence standard must be applied to all damages counted toward the total amount in controversy, including punitive damages."); *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006) (determining the amount in controversy based on the value of

declaratory and injunctive relief). Statutorily permitted attorneys' fees also count toward the total amount in controversy. *Woodmen*, 342 F.3d at 1218.

In the First Amended Complaint, Plaintiff requests nominal, compensatory, and punitive damages totaling $1,000,000, as well as "Attorney Fees and related court costs." (Doc. No. 9 at 1-2.) Plaintiff also demands "an injunction from this Court requiring the Defendant to institute a comprehensive fraud policy reform to help fix the problems that happened to Plaintiff[.]" (*Id.* at 2.) In addition, Plaintiff asks for "any other relief that this Court deem[s] appropriate." (*Id.*) Plaintiff alleges that "this case meets the subject matter jurisdiction requirement of being at least $75,000 in play," because "the comprehensive fraud policy reform injunction could cost the Defendant potentially millions of dollars to implement." (*Id.*) In addition, Plaintiff claims that Defendant's actions prevented him from investing "roughly $10,000 plus the ability to margin against 50%," and he alleges "that money itself would have been over $75,000." (*Id.* at 3.) The Court will consider each claim in turn.

**I.    Injunctive Relief**

In diversity actions where injunctive relief is sought, "the amount in controversy is measured by the value of the object of the litigation." *Phelps*, 5 F. 4th at 1126 (quoting *Lovell*, 466 F.3d at 897). Under such circumstances, the amount in controversy is quantified as either "the value of a judgment from the viewpoint of the plaintiff or the cost from the viewpoint of the defendant." *Id.* (citing *Justice v. Atchison, Topeka & Santa Fe Ry. Co.*, 927 F.2d 503, 505 (10th Cir. 1991)); *see also Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 399 (2d Cir. 1975) ("[T]he amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation.").

In support of its assertion that the cost of compliance with the injunctive relief sought here would not exceed $75,000, Defendant has submitted an affidavit from its Senior Vice President of Fraud Strategy, Corey R. Thompson.[1] (Doc. No. 23-3.) In the affidavit, Mr. Thompson avers:

> Plaintiff's requested relief to require U.S. Bank to 'institute a comprehensive fraud policy reform' would not cost U.S. Bank any significant amount of money to implement (and certainly nothing more than $75,000) given its robust and comprehensive fraud policies already in place, as well as its several departments that are dedicated to conducting investigations related to fraudulent account activity and any associated claims of fraud.

(*Id.* at ¶ 1.) Mr. Thompson states that Defendant "employs more than 500 people to create policies and rules to detect and prevent fraud across the enterprise," in addition to "a Fraud Strategy Team that is dedicated to implementing strategies to assist with fraud prevention," as well as "customer service agents [who] are trained to assist any customer through the initial process of documenting suspected fraud[.]" (*Id.* at ¶¶ 4-8.) Mr. Thompson provides further details concerning Defendant's existing policies and procedures for preventing, detecting, and managing fraud, and he avers that the bank adhered to these policies and procedures in handling Plaintiff's fraud claim at issue here. (*Id.* at ¶¶ 9-15.)

---

[1] In his Response, Plaintiff appears to challenge the authenticity of Mr. Thompson's affidavit. (Doc. No. 37 at 2.) However, Plaintiff provides no explanation as to why he believes the affidavit is inauthentic. Nor does the Court find any basis to question the affidavit's authenticity. In the affidavit, Mr. Thompson states, under penalty of perjury, that he is "over eighteen years of age," and has "personal knowledge of the facts and circumstances stated herein." (Doc. No. 23-1 at 1); *see FDIC v. Oaklawn Apts.*, 959 F.2d 170, 175 n.6 (10th Cir. 1992) (holding that affidavits supporting or contesting a Rule 12(b)(1) motion must contain "personal knowledge, admissible facts, and [an] affirmative showing of competency"). Therefore, given that the Court has "wide discretion" to consider matters outside of the pleadings to determine jurisdiction, the Court will consider Mr. Thompson's affidavit in connection with Defendant's motion to dismiss for lack of jurisdiction. *See Holt*, 46 F.3d at 1003.

In the present Motion, Defendant relies on Mr. Thompson's affidavit to argue that "instituting a fraud policy would not amount to any cost to U.S. Bank." (Doc. No. 23 at 11-12.) According to Defendant, Plaintiff's allegation that the implementation of such a policy would cost the bank "millions of dollars" is "mere conjecture and speculation." (*Id.* at 12; *see* Doc. No. 9 at 2.)

Plaintiff, in response, "disputes" Mr. Thompson's assertion that Defendant's existing fraud protection policies are, in fact, "robust and comprehensive." (Doc. No. 37 at 6.) Plaintiff states that he "believes with good reason and as an injured party" that the policies currently in place are "outrageously ineffective." (*Id.*) Reiterating the allegations set forth in his First Amended Complaint, Plaintiff goes on to argue that Defendant's existing fraud protection policies "failed on multiple fronts." (*Id.*) In addition, Plaintiff argues that Mr. Thompson's affidavit "fails to allege an 'actual' cost of implementing policy reform." (Doc. No. 27 at 2.) According to Plaintiff, because the affidavit states only that such cost would not exceed $75,000, this "means . . . that it very well could cost exactly $75,000[.]" (*Id.* at 3.) Plaintiff posits that this amount, "coupled [] with" his alleged monetary damages, puts this case "over the $75,000 threshold." (*Id.*)

In this case, Defendant's proffered evidence puts in dispute whether the cost of complying with Plaintiff's injunctive relief request would cost it more than $75,000. It is, therefore, Plaintiff's burden to prove that the cost of compliance could possibly exceed the jurisdictional threshold. *See McPhail*, 529 F.3d at 955 ("[A] proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence."); *Lenhardt v. City of Mankato, Kan.*, No. 18-4151-SAC-KGG,

2019 WL 2409617, at *4 (D. Kan. June 7, 2019) ("When the allegations of jurisdictional facts are properly challenged as here, the plaintiff must support them by competent proof, including amendments or affidavits, if necessary.") (internal citation and quotation marks omitted). However, Plaintiff has offered nothing more than his own speculative belief as to Defendant's compliance costs. As such, the Court does not have the information necessary to make a calculation as to the cost of the injunction. For that reason, the Court finds Plaintiff has not met his burden to establish that the injunctive relief claim satisfies, or meaningfully helps to satisfy, the amount in controversy requirement. *See Lacey v. Cornelius*, No. 22-cv-00557-LTB-GPG, 2022 WL 3099216, at *2 (D. Colo. May 25, 2022) ("Plaintiff has failed to provide any facts indicating that the value or cost of [the injunctive relief sought] exceeds $75,000. Thus, the injunctive relief request does not meet the $75,000 threshold for purposes of diversity jurisdiction."); *Lax v. APP of NM ED, PLLC*, CIV No. 20-264 SCY/JFR, 2020 WL 5890661, at *6 n.2 (D.N.M. Oct. 5, 2020) ("Because [the proponents of federal jurisdiction] present no evidence on the value of an injunction or disgorgement, they have not met their burden and the Court will not consider either in determining the amount in controversy."); *Stoorman v. Greenwood Trust Co.*, No. 92-C-493, 1992 WL 512162, at *3 (D. Colo. Sept. 22, 1992) ("There is no basis in the record to support the defendant's bald assertion that the cost of complying with an injunction will exceed $50,000."); *see also Gibson v. Jeffers*, 478 F.2d 216, 221 (10th Cir. 1973) (holding that a plaintiff's "general allegations" concerning damages to be insufficient to establish the requisite jurisdictional amount, where the plaintiff alleged only that "the amount in controversy exceeds $10,000 exclusive of interest and costs," but made no "attempt to show how he arrived at this amount").

## II. The Remaining Claims

Plaintiff also requests monetary damages and attorneys' fees in connection with his claims for fraud, deceptive trade practices, and emotional distress. (Doc. No. 9 at 2-3.) Defendant argues that, even assuming Plaintiff could prevail on those claims, his permitted damages "would amount to nowhere near $75,000.00." (Doc. No. 23 at 12.) Plaintiff, in response, does not address Defendant's arguments concerning damages, at all. (*See generally* Doc. Nos. 23, 27.)

### 1. Fraud

Plaintiff alleges that Defendant "generally defraud[ed]" him of "roughly $10,000," and deprived him of the ability to invest that money to generate additional funds. (Doc. No. 9 at 3.) Plaintiff claims that the money he likely would have earned from his investments "would have been over $75,000." (*Id.*)

In diversity actions, the scope of permissible damages is a question of state substantive law. *Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998); *Niemi v. Lasshofer*, 770 F.3d 1331, 1355 (10th Cir. 2014). Under Colorado law, which undisputedly applies here, "recovery in fraud is only allowed to the extent that the value of the contractual benefits conferred falls short of the value as represented, plus any other damages naturally and proximately caused by the misrepresentation." *Ballow v. PHICO Ins. Co.*, 878 P.2d 672, 677 (Colo. 1994) (citations omitted). In fraud cases, "[c]ompensatory damages are awarded in order to make the injured party whole." *Id.* (citations omitted). Thus, compensatory damages that create an economic windfall disproportionate to the plaintiff's injury are not allowed. *See id.* Punitive damages, while recoverable, are limited to "an amount which is equal to the amount of the actual damages awarded to the injured party." Colo. Rev. Stat. § 13-21-102. In addition, where a purportedly

defrauded party claims to have lost an opportunity to invest, Colorado law allows that party to recover statutory prejudgment interest in "an amount which fully recognizes the gain or benefit realized by the person withholding [his] money or property." Colo. Rev. Stat. § 5-12-102(1)(a); *see Witt v. State Farm Mut. Auto. Ins. Co.*, 942 P.2d 1326, 1327 (Colo. App. 1997) ("Prejudgment interest is a form of compensatory damages and represents a legislatively prescribed award for delay in a plaintiff's receipt of money to which he or she is legally entitled."). "Absent proof of the withholding party's gain or benefit, however, interest is awarded at the statutory rate of eight percent per year." *Patterson v. BP Am. Prod. Co.*, 360 P.3d 211, 217 (Colo. App. 2015) (citing Colo. Rev. Stat. §5-12-102(1)(b); *E.B. Jones Constr. Co. v. City & Cnty. of Denver*, 717 P.2d 1009, 1015 (Colo. App. 1986)). Proof of the withholding party's gain or benefit "cannot be too speculative or general and must reflect the defendant's actual gain or benefit realized on the withheld funds." *Id.* at 218 (citations omitted).

As to this claim, the Court finds that Plaintiff has plausibly alleged compensatory damages of, at most, $9,910.67. As a result, any award of punitive damages pertaining to Plaintiff's fraud claim would necessarily be capped at $9,910.67. Colo. Rev. Stat. § 13-21-102. To the extent Plaintiff seeks to recover prejudgment interest, he has failed to allege any specific facts suggesting he is entitled to more than the statutory rate. *Patterson*, 360 P.3d at 218. Therefore, the Court finds it a legal certainty that Plaintiff's fraud claim, alone, does not satisfy the requisite amount in controversy.

**2. Deceptive Trade Practices**

Plaintiff alleges that Defendant engaged in "deceptive trade practices," which the Court construes as a claim under the Colorado Consumer Protection Act ["CCPA"], Colo. Rev. Stat. §§

6-1-101 *et seq.*. (Doc. No. 9 at 3.) The CCPA allows Colorado consumers to seek damages in a civil action against any person "who has engaged in or caused another to engage in any deceptive trade practice listed in [the CCPA]." Colo. Rev. Stat. § 6-1-113(1)(a). Damages under the CCPA are limited to "(a) The greater of: (I) The amount of actual damages sustained; or (II) Five hundred dollars; or (III) Three times the amount of actual damages sustained, if it is established by clear and convincing evidence that [the defendant] engaged in bad faith conduct[.]" *Id.* § 6-1-113(2)(a). Reasonable attorneys' fees are also recoverable under the CCPA. *Id.* at § 6-1-113(b).

Accepting Plaintiff's allegations as true, his actual damages resulting from Defendant's deceptive trade practices amount to $9,910.56. Thus, even assuming Plaintiff could meet the CCPA pleading requirements and prove bad faith, the total amount of recoverable damages on his claim would be, at most, $29,732.01.[2] Colo. Rev. Stat. § 6-1-113(2)(a). While Plaintiff may rely on this figure to satisfy the amount in controversy requirement, it does not take the value of this lawsuit beyond the $75,000 jurisdictional threshold.

**3. Emotional Distress**

Finally, Plaintiff alleges that Defendant caused him to suffer "substantial emotional distress." (Doc. No. 9 at 3.) To the extent Plaintiff is asserting a standalone claim for emotional distress, he has failed allege any facts regarding his entitlement to damages. Plaintiff provides no details concerning the nature of his emotional distress, nor does he allege any facts suggesting

[2] Given that Plaintiff is a *pro se* litigant, any attempt to quantify the amount of attorneys' fees that might ultimately be awarded on his CCPA claim would be speculative, at best. As such, Plaintiff cannot rely on his request for attorneys' fees to satisfy the amount in controversy requirement either. *See Tafoya v. Am. Family Mut. Ins. Co.*, No. 08-cv-01656-MSK-MEH, 2009 WL 211661, at *2 n.5 (D. Colo. Jan. 28, 2009) ("[T]he mere fact that attorney's fees might be awarded to the Plaintiffs does not establish that the fees claimed (or found to have been reasonably incurred) would exceed $ 75,000.").

that the injury resulted from Defendant's conduct. Without such allegations, the Court is unable to make a calculation of Plaintiff's damages, if any, resulting from this claim. *See Klein*, 2008 WL 4948775, at *3 ("Without a reasonable calculation of the Plaintiff's actual damages, there can be no assumption that exemplary damages could be awarded, much less that such award would hoist the amount in controversy to $75,000."); *Nagim v. Abraham*, No. 11-cv-00729-CMA-MEH, 2011 WL 1211394, at *1 (D. Colo. Mar. 31, 2011) (remanding for lack of subject matter jurisdiction, where the defendants provided "no objective evidence, or factual or economic analysis" showing that the amount in controversy exceeded $75,000). As a result, Plaintiff cannot rely on this claim to satisfy the requisite amount in controversy. *See Marin*, 2022 WL 3099207, at *5.

* * *

On this record, then, Plaintiff has failed to carry his burden of establishing, by a preponderance of the evidence, that the amount in controversy may exceed the jurisdictional threshold. *McPhail*, 529 F.3d at 953; *Canidae*, 2022 WL 279623, at *6 ("Because plaintiff has not met its burden, plaintiff has not shown that the Court has subject matter jurisdiction."). Dismissal of this case without prejudice is thus warranted. *See Brereton*, 434 F.3d at 1216 (stating that the dismissal of a case for lack of subject matter jurisdiction should be without prejudice). As such, there is no need to address Defendant's other arguments for dismissal.

## CONCLUSION

For the reasons set forth herein, this Court respectfully **RECOMMENDS** that:

(1) "U.S. Bank's Motion to Dismiss and Compel Arbitration" (Doc. No. 23) be **GRANTED**.

(2) This case be **DISMISSED without prejudice** for lack of subject matter jurisdiction.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal

the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

**DATED**: January 27, 2023.

**BY THE COURT:**

Maritza Dominguez Braswell
United States Magistrate Judge